Melissa Levine, Esq. (ML 8111)
GOLD BENES, LLP
Attorneys for Plaintiff
DOROTHY BREDEHORN
1666 Newbridge Road, Second Floor
Bellmore, New York 11710
(516) 512-6333
Facsimile: (516)512-6334
mlevine@goldbenes.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DOROTHY BREDEHORN,

              Plaintiff,                        Docket #: 2:19-01010
                                                      (SJF) (AKT)

        -against-

GRETCHEN JONES YOUNG aka GRETCHEN JONES aka
GRETCHEN YOUNG as Trustee of the Bredehorn
Irrevocable Catastrophic Illness Trust; GRETCHEN JONES
YOUNG, aka GRETCHEN JONES aka GRETCHEN
YOUNG Individually; Bruce Young,             **Plaintiff demands a Jury Trial**

              Defendants.
-----------------------------------------------------------------X

## VERIFIED AMENDED COMPLAINT

Dorothy Bredehorn, by her attorneys Gold Benes, LLP for her Amended Complaint alleges as follows:

1. Dorothy Bredehorn, aged 89, is a resident of Wantagh, New York ("Dorothy" or "Plaintiff")

2. Dorothy is the grantor of the Bredehorn Irrevocable Catastrophic Illness Trust. ("Trust").

3. Dorothy's estranged niece, Gretchen Young, aka GRETCHEN YOUNG aka GRETCHEN YOUNG was named Trustee of the Trust and a beneficiary. (Hereinafter, "Gretchen Young");

4. Gretchen Young is an individual who resides at 1834 Spruce Street, Napa California.

5. Gretchen Young is being sued as Trustee, and in her individual capacity.

6. Bruce Young is an individual who resides at 1834 Spruce Street, Napa California.

## JURISDICTION OF COURT

7. This Court has subject matter jurisdiction over this matter, under 28 U.S.Code §1332, Diversity of Citizenship, as the Plaintiff resides in New York State and the Defendants reside in California and the amount in in controversy is over $75,000.00.

## GEORGE BREDFEHORN'S INTELLECTUAL PROEPRTY

8. The Plaintiff was married to George Bredehorn, who died in December 2012. George was a creator of games, puzzles and books. ("George's Intellectual Property").

9. The value of George's Intellectual Property to Dorothy is priceless, given its association with her late husband.

## PLAINTIFF'S ACCIDENT AND GRETCHEN YOUNG'S ROLE IN HER CARE

10. Prior to October 13, 2013, the Plaintiff was an active octogenarian. She lived independently in her house of 50 years, and for most of that time, until his death, shared that house with George. She volunteered at the local animal shelter and also provided office support at the local ambulance company. She maintained her own finances. She was an avid reader. She was a statistician by trade and understood numbers well. Her memory was good.

11. On or about October 13, 2013 everything changed. She was walking in a parking lot when a car hit her; and, as a result, she received serious head trauma, including subarachnoid

blood, extraaxial blood, temporal bone fracture, loss of memory, vertigo, venous sinus thrombosis on the left, decreased hearing and severe headaches and difficulty concentrating.

12. Plaintiff was in the hospital and/or rehab through October 25, 2013. Thereafter, Gretchen Young, Plaintiff's niece, came to live with the Plaintiff through the end of 2013, while the Plaintiff was recovering. ("Care Period"). However, Dorothy's recuperation extended will into 2014 and beyond.

13. Prior to October 25, 2013, the Plaintiff and Gretchen Young had a very loving relationship. Often the Plaintiff would take Gretchen Young on vacations, which the Plaintiff paid for, as the Plaintiff's late husband George did not like to travel.

14. Upon information and belief, during this Care Period, and beyond, the Plaintiff was unable to focus on her financial affairs and was thus was entirely dependent upon Gretchen Young to take care of the same but trusted her niece totally and completely to honestly and competently take care of her affairs.

15. Upon information and belief, during the Care Period and beyond, Gretchen Young would present the Plaintiff with documents for her signature, and the Plaintiff, who had trouble concentrating enough to read those documents and focus on their significance, would sign those documents, because she had complete trust in her beloved niece.

16. Upon information and belief, during the Care Period and beyond, Plaintiff's signed name appears on many documents (although she has very little memory of signing those documents or of what she was signing, if she signed those documents at all). Many of those documents, as described below, transferred control of the Plaintiff's financial affairs to Gretchen Young, and also transferred control over certain intellectual property owned by the Plaintiff to Gretchen Young.

17. Upon information and belief, during the Care Period and beyond, Gretchen Young engaged in the following acts of crass dishonesty, and/or negligence of duties:

## GRETCHEN YOUNG EXCEEDED HER GIFT GIVING POWERS UNDER THE POWER OF ATTORNEY

18. On November 26, 2013 a power of attorney was originated, which has the signature of "Dorothy Bredehorn", in which the Dorothy allegedly appointed Gretchen Young as agent of all matters that fall under that document, including the making of gifts to Gretchen Young and others ("POA"); but that POA limited Gretchen Young's power to make said gifts, collectively, to $500.00 per year.

19. Upon information and belief, Dorothy has no memory of signing that document although she does acknowledge that in or about November 26, 2013, she was completely dependent upon her niece to take care of her financial affairs.

20. After the POA was signed, between and including December 23, 2013 through and including March 2015, Gretchen Young exceeded her authority under the POA by gifting herself and/or other family members (not related to the Plaintiff), in excess of $296,000.00.

21. More specifically, in May 2014 Gretchen Young transferred $275,000.00 of the Plaintiff's money out of Plaintiff's Charles Schwab accounts into a joint account that Defendant Gretchen Young had with her husband Defendant Bruce Young.

22. In June 2014, Gretchen Young transferred $14,900.00 of the Plaintiff's money into said joint account.

23. In February and March 2015, Gretchen Young used $2,467.25 of the Plaintiff's money to pay the Defendant's legal bills incurred in connection with her claims (denied by the Plaintiff) that the Plaintiff had transferred George's Intellectual Property to her.

24. In December 2013 and against in December 2014, Gretchen Young used the Plaintiff's money to make holiday gifts in excess, collectively, of the $500.00 gift limit imposed by the POA, to herself, her husband and her father.

### DEFENANT BELIEVED HER AUNT TO BE INCOMPETENT AND YET SHE MADE LAVISH GIFTS OF THE PLAINTIFF'S MONIES TO HERSELF AND OTHERS; AND PARTICIPATED IN A TRANSACTION THAT TRANSFERRED HER AUNT'S INTELLECTUAL PROPERTY TO HERSELF

25. An "Agreement letter" allegedly between the Plaintiff and Gretchen Young, dated March 16, 2014, provides, among other provisions:

> This letter confirms my wish to transfer all the rights to George Bredehorn's games, puzzles, books and other intellectual property to you, Gretchen Young. I assign all legal rights to this property to you.
> If any profits are received by the company as a result of your marking efforts, you agree to pay me _____ % of the profits annually during my liftetime.

(Exhibit 1). ("Letter Agreement"). Said document contains signatures: "Dorothy Bredehorn" and "Gretchen Young."

26. The Plaintiff has no memory of signing the Letter Agreement, which may or may not contain the Plaintiff's authentic signature.

27. Upon information and belief, at the time that the Letter Agreement was signed by the parties (assuming that the Plaintiff signed that agreement at all), Gretchen Young believed that her Aunt was incompetent. Proof of this is found in documentary evidence that on or about March 25, 2014, which was only a short time after the Letter Agreement was allegedly signed, Gretchen Young contacted the Plaintiff's trust attorney Jeffrey Blankstein and indicated to him that she believed her Aunt to be lacking in mental capacity.

28. Thus, assuming that the Plaintiff signed the Letter Agreement at all, it would be fair to say that Gretchen Young, at such time, knew that her Aunt, at least in Gretchen Young's opinion, did not have the mental capacity to make such a decision to transfer her husband's beloved games to another and yet she participated in that transaction anyway, clearly in violation of the trust that her Aunt had in her.

29. Less than two months after Gretchen Young indicated to attorney Blankstein that she believed her Aunt to be mentally incompetent, in May of 2014, Gretchen Young transferred $275,000.00 of her Aunt's money to herself and her husband Defendant Bruce Young and then in June of 2014, another $14,900.00.

30. Even if the Plaintiff authorized some or all of said transfer, given Gretchen Young's belief that her Aunt was incompetent, such a large self-serving gift should never have taken place until such time that the Defendant believed that her Aunt's mental condition had improved to the point of competency.

31. Upon information and belief, as a result of her injuries, on or about May 8, 2014, $163,572.53 in net proceeds from a personal injury settlement, were wired by the Plaintiff's attorneys into one of Dorothy's Charles Schwab accounts, which, as described below, were completely controlled by the Defendant Gretchen Young.

32. Upon information and belief, Dorothy has never known the exact amount of the net proceeds transferred into her account.

33. The Plaintiff admits that she authorized Gretchen Jones to use the net proceeds from that personal injury settlement towards a down payment for the purchase of the Defendants' house, although at the time that the Plaintiff provided such authorization, the Plaintiff was still

recovering from her head injuries as a result of the accident, and the Defendant Gretchen Young believed the Plaintiff to be mentally incompetent.

34. In February 2015 and in March 2015, Gretchen Young transferred a total of $2,467.25 of her Aunt's money to pay Gretchen Young's legal bills in connection with Gretchen Young's transfer of George's Intellectual Property to herself, notwithstanding the fact that during that same time period she contacted the Plaintiff's physician Joel Laxer questioning her Aunt's mental capacity.

### GRETCHEN YOUNG USED HER SPECIAL CLOSE RELATIONSHIP WITH HER AUNT TO TAKE OVER TOTAL CONTROL OVER HER AUNT'S FINANCES AND LEAVE HER AUNT IN THE DARK REGARDING THE PLAINTIFF'S QUESTIONABLE TRANSACTIONS REGARDING THOSE FINANCES

35. Upon information and belief, the Plaintiff has not used her home computer since her accident.

36. During the Care Period and beyond, Gretchen Young ensured that she had complete control and supervision over the Plaintiff's computer and erased documents from that computer, including, what appears to be financial documents:

    i. Upon information and belief, on or about November 19, 2013, shortly after the Care Period began, which was only about a month after the Plaintiff's accident, Gretchen Young and/or an agent of Gretchen Young installed, without the Plaintiff's knowledge and/or permission, "Team Viewer 8" software on the Plaintiff's home computer, which permitted Gretchen Young, whose home address was California, to control that computer remotely; and a wifi router;

    ii. Upon information and belief, on or about December 3, 2013, Gretchen Young and/or an agent of Gretchen Young installed, without the Plaintiff's knowledge and/or permission, "Glary Utilities," which is software which permits the user to erase en masse,

without a trace, documents from the computer; and upon information and belief, on or after December 3, 2013, documents were deleted, en masse, from the computer, although bits and pieces of some of those documents, although not readable, were recovered. Included among the documents appears to be financial documents; and

   iii. Upon information and belief, beginning sometime after October 25, 2013, it is clear that Gretchen Young and/or other family members accessed the Plaintiff's computer remotely as there are files on that computer to this day, such as Gretchen Young's father's family photographs and other odd files, unrelated to the Plaintiff, on that computer.

37. Upon information and belief, during the Care Period and beyond, Gretchen Young took steps to remove the Plaintiff's control over the Plaintiff's investment portfolio so that the Plaintiff was in the dark that Gretchen Young had exceeded her authority regarding Gretchen Young's gift giving powers under the POA:

   i. Upon information and belief, when Gretchen Young left Dorothy's house, to return home to California, at the end of December, 2013, without Dorothy's knowledge and/or consent, Gretchen Young removed all paper documents related to the Plaintiff's finances, and left only the empty files, in the filing cabinet where the documents had been stored;

   ii. Upon information and belief, on or about January 28, 2014 and again on or about June 2, 2014, utilizing her powers under the POA, Gretchen Young, without the Plaintiff's knowledge and/or understanding, transferred Dorothy's entire investment portfolio into new accounts at Charles Schwab, and such activities caused the Plaintiff tax implications because certain IRAs were not rolled over properly. ("Charles Schwab Accounts");

   iii. Upon information and belief, the Defendant Gretchen Young took steps to ensure that the Plaintiff had no knowledge of the activities on the Charles Schwab Accounts, in

that she did not provide Dorothy with the account numbers, the Plaintiff never received monthly statements on those accounts or updates from Gretchen Young regarding those accounts; and in fact, in late 2014, after Gretchen Young had transferred large sums of money out of the Plaintiff's Charles Schwab accounts to herself, she went so far as to change the mailing address on the account, from the Plaintiff's address to her own California address; and

iv. In early November 2013, when the Plaintiff was in the early stages of recovering from her accident, Gretchen Young took the Plaintiff to Investors Bank and put her name jointly on two bank accounts, and then proceeded to write holiday gifts to herself, her husband and her father, in both December 2013 and December 2014.

## WHEN DOROTHY DISCOVERED THAT GRETCHEN YOUNG WAS NOT ACTING IN HER BEST INTERESTS, SHE REMOVED GRETCHEN YOUNG AS AGENT

38. In the Winter and Spring of 2015, Dorothy discovered that her ownership in George's Intellectual Property had been somehow transferred to Gretchen Young a year previously; and also learned from Dorothy's family physician Dr. Joel Laxer, MD., that Gretchen Young has inappropriately called him to see if she could obtain an affirmation from him that Dorothy was mentally incompetent. As a result, Dorothy terminated all communications with Gretchen Young, removed Gretchen Young as her beneficiary on a certain revocable trust, and in her last will and testament; and named a new power of attorney Alfred Piscop in place of Gretchen Young.

39. In or about September 2015 or thereafter, Dorothy learned through her new investment advisor about the Charles Schwab Accounts, and directed that investment advisor to remove her monies from those accounts to another institution.

## AS AND FOR A FIRST CAUSE OF ACTION

### (against Defendant Gretchen Young)

## BREACH OF FIDUCIARY DUTY

40. Plaintiff repeats and realleges each of the allegations above.

41. Commencing from October 25, 2013 through April 2015, Gretchen Young, as the Plaintiff's fiduciary, owed a duty of care to the Plaintiff, by reason of the POA and/or as well as the Plaintiff's diminished capacity both physically and mentally, during the Care Period and beyond, as a result of the Plaintiff's accident.

42. In her capacity as fiduciary, Gretchen Young violated the Plaintiff's trust in her when she transferred over $296,000.00 from the Plaintiff's financial accounts to herself and/or others; and even if a portion of that transfer, i.e., $163,572.53 or less, is found to have been authorized by the Plaintiff, such authorization was made at the time that Gretchen Young believed the Plaintiff to be mentally incapacitated and at the time that the Plaintiff was not completely recovered from her accident, and thus was till a breach of the Plaintiff's trust in her.

43. The Plaintiff, as a result of Gretchen Young's breach of trust, has been directly damaged by the same in the amount of not less than $126,427.47 plus interest at 9% per annum.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Against Defendant Gretchen Young)

### BREACH OF FIDUCIARY DUTY

44. Plaintiff repeats and realleges each of the allegations above.

45. In her capacity as fiduciary, Gretchen Young violated the Plaintiff's trust in her when she misappropriated assets belonging to Plaintiff on or about March 16, 2014 by either forging Dorothy's name on the Letter Agreement or by having Dorothy sign it, while she was in a diminished state of mind without explaining it to her.

46. Regardless, Dorothy - now in a proper state of mind and competency- has no recollection of signing the letter, and seeks to have the letter declared "null and void" either because she never signed it, or because if she did, she was under diminished capacity and/or was unaware of what she was signing.

47. Further, the alleged March 16, 2014 letter is void because a material term, i.e. the percentage of profits payable to Dorothy was left blank, and in any event, there has been no performance in connection with that paragraph.

48. The Plaintiff, as a result of Gretchen Young's breach of trust, has been directly damaged by the same in that George's Intellectual Property, the value of which is priceless, has been taken from her.

49. Gretchen Young's conduct reflected a willful indifference or disregard of civil obligations and defrauded Dorothy out of assets, and forced Dorothy to incur costs.

50. By Reason of the foregoing, this Court should declare the Letter Agreement to be null and void and return ownership of George's Intellectual Property to the Plaintiff; and direct the transfer of all trademarks held by Gretchen Young and/or those associated with her, regarding that property, to the Plaintiff; and all consequential and punitive damages should be allowed by law.

51. To the extent the Letter Agreement is found to be valid, Plaintiff demands an accounting with respect thereto.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Against the Defendant Gretchen Young)

### Fraud

52. Plaintiff repeats and realleges each of the allegations above.

53. Upon information and belief, the Defendant Gretchen Young committed fraud when she tricked the Plaintiff into becoming obligated under the Letter Agreement.

54. By reason of the foregoing, the Court should declare the Letter Agreement to be null and void and ownership in that property should be returned to the Plaintiff, and all consequential and punitive damages should be allowed by law.

55. To the extent the Letter Agreement is found to be valid, Plaintiff demands an accounting with respect thereto.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (against Defendant Gretchen Young)

### Fraud

56. Plaintiff repeats and realleges each of the allegations above.

57. The Plaintiff, to the extent that she had the mental capacity to make such a decision, agreed that the Defendant could pay the down payment on the Defendants' house from the proceeds of the Plaintiff's personal injury settlement.

58. Upon information and belief, the Plaintiff did not know the amount of the actual proceeds and Gretchen Young handled all contacts with the Plaintiff's attorneys regarding the settlement.

59. Upon information and belief, the amount of the proceeds were $163,572.53 and thus Defendant Gretchen Young's authorization to use those funds for a down payment did not exceed that amount.

60. Upon information and belief, Gretchen Young used at least $111,427.47 in excess of that amount.

61. Upon information and belief, Gretchen Young was well aware of the actual amount of the personal injury proceeds, as she had complete control over the Plaintiff's Charles Schwab accounts (by virtue of the POA), provided the Plaintiff's lawyers with an account number for one of the Plaintiff's Charles Schwab accounts, which was then used by said attorneys to wire those funds into the account, which took place on or about May 8, 2014.

62. Upon information and belief, the Plaintiff relied upon Gretchen Young's representation that she would not use in excess of the amount of the personal injury proceeds towards the purchase of the Defendants' house.

63. The Plaintiff has been damaged by Gretchen Young's misrepresentation regarding the personal injury proceeds, in the amount of at least $111,427.47 plus 9.00 % interest from May 19, 2014, which was the date of the transfer.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Against both Defendants)

### Conversion

64. Plaintiff repeats and reiterates each of the allegations above.

65. The Defendants have dominion over at least $136,327.50 of monies that belong to the Plaintiff.

66. On May 19, 2014, $275,000.00 of the Plaintiff's monies was transferred from the Plaintiff's Charles Schwab account to the Defendants' joint Charles Schwab account; and on or about June 23, 2014, $14,900.00 was also transferred between those two accounts. These monies add up to $289,900.00. Assuming that the Defendant Gretchen Young was authorized to transfer not more than $163,572.53 in personal injury proceeds from the Plaintiff's account (which the Plaintiff disputes given the Plaintiff's physical and mental condition at that time and

given Gretchen Young's belief of the Plaintiff's incompetency around that time), then the amount converted would be at least $126,327.47.

67. By reason of the foregoing, the Plaintiff is entitled to a judgment against each of the Defendants, joint and severally, in the amount of at least $126,327.50 with interest beginning from May 19, 2014.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Against Defendant Gretchen Young)

### Conversion

68. Plaintiff repeats and reiterates each of the allegations above.

69. The Defendant Gretchen Young asserted unauthorized dominion over at least $132,427.47 of monies that belong to the Plaintiff.

70. Between and including December 23, 2013 and March 25, 2015, Gretchen Young transferred at least $296,000.00 of the Plaintiff's monies for unauthorized gifts to herself and others. Assuming that the Defendant Gretchen Young was authorized to transfer not more than $163,572.53 in personal injury proceeds from the Plaintiff's account (which the Plaintiff disputes given the Plaintiff's physical and mental condition at that time and given Gretchen Young's belief of the Plaintiff's incompetency around that time), then the amount converted would equal $132,427.47.

71. By reason of the foregoing, the Plaintiff is entitled to a judgment against Defendant Gretchen Young in the amount of at least $132,427.47 with interest beginning from December 23, 2013.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (against the Defendant Gretchen Young)

72. Plaintiff repeats and reiterates each of the allegations above.

73. Gretchen Young's individual acts of gross dishonesty and failure to maintain Trust Assets, warrant her immediate removal as Beneficiary and Trustee and the appointment of replacements.

## AS AND FOR An EIGHTH CAUSE OF ACTION

### (against the Defendant Gretchen Young)

74. Plaintiff repeats and realleges each of the allegations above.

75. Upon information and belief, as a result of Defendant Gretchen Young's failure as Trustee to maintain insurance, pay taxes and maintain upkeep on the property, Dorothy has had to incur expenses to do same, in the amount of not less than $65,000 and that sum is subject to increase.

76. As a result of Defendant Gretchen Young's failure to pay taxes, Dorothy is at risk of losing her home and/or may have to pay interest in order to keep it.

77. By reason of the foregoing, Defendant Gretchen Young, in her individual capacity, is indebted to Plaintiff in the sum of at least $65,000 plus interest at 9% per annum.

WHEREFORE, the Plaintiff, Dorothy Bredehorn, demands judgment as follows:

**First Cause of action against Gretchen Young (Breach of Fiduciary Duty):** A judgment of not less than $126,427.47 plus interest at 9% per annum.

**Second and Third Causes of action against Gretchen Young (Breach of Fiduciary Duty):** An order declaring the Letter Agreement to be null and void, return of ownership of George's Intellectual Property to the Plaintiff; and an order directing the transfer of all trademark held by Gretchen Young and/or those associated with her, to the Plaintiff; and to the extent the Letter Agreement is found to be valid, Plaintiff demands an accounting with respect thereto.

Fourth Cause of action against Gretchen Young (Fraud): A judgment of not less than $111,427.47 plus interest from May 19, 2014

Fifth Cause of action against both Defendants (Conversion): a judgment, joint and severally against both Defendants, in the amount of at least $126,327.50 with interest beginning from May 19, 2014.

Sixth Cause of action against Defendant Gretchen Young (Conversion): a judgment of not less than $132,427.47 with interest beginning from December 23, 2013.

Seventh Cause of action against Defendant Gretchen Young: Removal as Beneficiary and Trustee and appointment of replacements.

Eighth Cause of action against Defendant Gretchen Young: A judgment of at least $65,000 plus interest at 9% per annum.

On all of the claims, to the extent applicable, costs, disbursements, attorneys' fees, consequential, punitive damages and such other and further relief as is just and equitable.

Dated: Bellmore, New York
August 16, 2019

                          Yours, etc.

                          M. Levine, Esq.

                          _____
                          Melissa Levine, Esq.

TO:   Mr. Bruce Young
        1834 Spruce Street
        Napa, California 94559

        Lepatner & Associates, LLP
        Harry Petchesky, Esq.
        Attorney for Gretchen Young
        10 East 40th Street, Suite 17710
        New York, NY 10016

EXHIBIT 1

# Agreement letter

Dear Gretchen,

I appreciate your desire to keep the memory of George alive by forming a company to market his games, puzzles and other intellectual property.

This letter confirms my wish to transfer all the rights to George Bredehorn's games, puzzles, books and other intellectual property to you, Gretchen Jones Young. I assign all legal rights to this property to you, to put into a company that is principally or exclusively owned by you. You shall have exclusive rights to market any and all of George's intellectual property.

I grant you the right to take physical position of the original games, puzzles and books to keep them in a safe place for preservation, documenting and cataloging so they can be properly marketed.

If any profits are received by the company as a result of your marketing efforts, you agree to pay me _____ % of the profits annually during my lifetime.

I will continue to receive any royalties due George's estate from his books published prior to his death on December 21, 2012.

Agreed:

_[signature]_
Dorothy Bredehorn

_16 March 2014_
Date

Agreed:

_[signature]_
Gretchen Jones Young

_16 March 2014_
Date

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

I, Dorothy Bredehorn, being duly sworn, under the penalties of perjury, deposes and states: I am Dororthy Bredehorn, I reside at 713 Francis Drive, Wantagh, New York 11793 and I am party in the within action. My attorney Melissa Levine, Esq. has read the AMENDED COMPLAINT to me, and I swear under oath that it is true and accurate; and the same is true to my own knowledge, except as to the matters therein stated to be alleged to be upon information and belief, and as to those matters I believe it to be true. This verification is made by me because I am a Plaintiff in the within action.

_____
Dorothy Bredehorn

Sworn to before me this
____ Day of August, 2019

_____
Notary Public

DONNA M. EYRING
Notary Public, State of New York
Qualified in Nassau County
No. 01EY6358452
Commission Expires May 08, 20 21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DOROTHY BREDEHORN,
Case # 2:19-cv-01010-SJT-AKT
-against-
GRETCHEN JONES YOUNG aka GRETCHEN JONES aka
GRETCHEN YOUNG as Trustee of the Bredehorn
Irrevocable Catastrophic Illness Trust, and GRETCHEN JONES
YOUNG, aka GRETCHEN JONES aka GRETCHEN
YOUNG Individually,
Defendants.
-------------------------------------------------------------------X

## VERIFIED AMENDED COMPLAINT

### GOLD BENES LLP
Attorneys for Defendants
1666 Newbridge Road, Second Floor
Bellmore, New York 11710
(516) 512-6333
Fax: (516) 512-6334
mlevine@goldbenes.com